

**NUMBER 13-08-00544-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

**EX PARTE:  ANDREW TOMLINSON**

**On appeal from the 28th District Court of Nueces County, Texas.**

# O P I N I O N

**Before Chief Justice Valdez and Justices Yañez and Benavides
Opinion by Justice Benavides**

Pursuant to a plea bargain, appellant, Andrew Tomlinson, pleaded guilty to three counts of indecency with a child, a second-degree felony.  *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2003).  The trial court deferred adjudication, placed Tomlinson on community supervision for eight years, and assessed a fine of $3,000 and court costs. Tomlinson filed an application for a writ of habeas corpus, which the trial court denied; he now appeals.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 8 (Vernon 2008).  By a single issue, Tomlinson argues that he received ineffective assistance of counsel because his counsel (1) advised him to lie to the court and state that he was guilty, when he was not

guilty; and (2) failed to advise him that, as a condition of community supervision, he would be required to admit guilt in counseling sessions. We affirm.

## I. BACKGROUND

Tomlinson was indicted for three counts of indecency with a child, S.T., who is his minor daughter. On November 15, 2004, Tomlinson waived a jury trial and, at a hearing conducted by the Honorable Nanette Hassette, presiding judge of the 28th District Court of Nueces County, Tomlinson pleaded guilty to all three counts as part of a plea agreement. Tomlinson signed a judicial confession and stipulation stating that his attorney investigated his case and advised him of potential defenses, that he was satisfied with his attorney's representation, and that he was pleading guilty to all three counts of the indictment because he was guilty. Finally, the stipulation stated that the plea was made voluntarily, knowingly, and intelligently.

During the plea hearing, Tomlinson was sworn in as a witness and represented to Judge Hassette that he had discussed the case with his attorney, David Sibley, and was satisfied with Sibley's representation. Judge Hassette inquired, "Are you pleading guilty to each of these counts, Mr. Tomlinson, because you are guilty?" Tomlinson replied, "Yes," and further stated that no one forced him to plead guilty and that he was pleading guilty freely and voluntarily. Judge Hassette admonished Tomlinson of the consequences of his plea, accepted the plea, approved the plea agreement, and assessed eight years of deferred-adjudication community supervision. As part of his community supervision, Judge Hassette required Tomlinson to "attend and participate in a sex offender treatment program," and defined the participation to include "acknowledgment of responsibility for the

2

defendant's offense."[1]

On May 19, 2008, Tomlinson filed an application for a writ of habeas corpus alleging that he received ineffective assistance of counsel. He argued that Sibley advised him and permitted him to plead guilty, and the plea was involuntary for various reasons.[2] He claimed that before pleading guilty, he told Sibley that he was factually innocent. Tomlinson's application states that "[d]efense counsel told defendant that if the court asked him whether he was pleading guilty because he was guilty, he was to lie and tell her 'yes' even though he knew this was not true." Tomlinson further argued that Sibley did not inform him prior to the plea that, as a condition of community supervision, he would have to attend counseling and make a full and complete confession of the conduct alleged in the indictment. He claimed that Sibley informed him of this condition after the plea was entered, and Sibley advised him to "make up a story" to meet this requirement.

Tomlinson attached a verification stating that the allegations in his application were true and also attached a transcript of a pre-trial hearing during which Sibley argued against pre-trial bond conditions because Tomlinson had not been formally charged, had no notice of the factual basis of the charges, and had not received due process. Tomlinson testifed at the pre-trial hearing and denied knowledge of the charges against him. Tomlinson

---

[1] On March 9, 2007, the State filed a motion to revoke Tomlinson's community supervision because Tomlinson failed to comply with the terms of supervision, including that Tomlinson was discharged from his sex offender treatment program for lack of progress due to excessive absences. Tomlinson pleaded "true" and was sanctioned by the trial court, but his community supervision was not revoked. On October 3, 2007, the State filed another motion to revoke Tomlinson's community supervision alleging the same violation—that Tomlinson was again discharged from the sex offender treatment program due to lack of attendance. Tomlinson again pleaded "true," and the court again sanctioned Tomlinson but did not revoke his community supervision. These orders have not been challenged in this appeal.

[2] On appeal, Tomlinson only argues that he received ineffective assistance of counsel because Sibley advised him to lie about his guilt in order to accept the plea agreement and that Sibley did not inform him about the counseling requirement until after the plea was entered.

denied that any allegation of abuse was true and requested that he be allowed to visit his children.

On June 17, 2008, the State filed a response and attached an affidavit from Sibley. Sibley denied the allegations in Tomlinson's application:

> Andrew Tomlinson did claim innocence. However, he also said that he may have done the alleged acts while he was drunk. He stated that he was drunk (or on drugs) during that time frame. He did not categorically rule out the possibility that he had done the acts in question. He took a polygraph test. His denials of the allegations at issue according to the test showed "deception."
>
> . . .
>
> David Sibley probably did tell Frank Erico [the prosecutor] that he believed Andrew Tomlinson innocent. Sibley did believe that based on Tomlinson's statements, review of the videotapes, and the bad character and actions of Andrew Tomlinson's wife. This belief was weakened when Andrew Tomlinson failed the polygraph test and when he said he may have done the acts at issue when he was drunk. This belief was further weakened when Andrew Tomlinson decided to plead guilty.
>
> . . .
>
> David Sibley never advised Andrew Tomlinson to lie. He did say Andrew Tomlinson would have to admit guilt if he took the deal—not only as part of his plea but due to the resulting counseling/treatment. He would be expected to admit his problem as part of his treatment/counseling. Of course, he knows whether it is or isn't a lie—not David Sibley. However, he never categorically denied he did what he was accused of doing. He several times said he might have done it while he was drunk (drunkenness probably would not amount to a defense).
>
> . . .
>
> There were substantial discussions about the consequences of the plea including registration requirements, avoidance of playgrounds and schools, etc. Andrew Tomlinson was well aware of most of this because several sex offenders live on his street. One of these individuals for years had to have a sign in his front yard. Tomlinson was told not only that various requirements and restrictions would exist but that they could change at any time.

4

The State attached the results of a polygraph test that indicated deception in response to the questions (1) "Did you touch [S.T.]'s vagina for sexual purposes?"; and (2) "Did you touch [S.T.]'s vagina while she was sleeping?".

After the State filed its response, Tomlinson filed three affidavits. First, he filed his own affidavit, which stated:

> In the Affidavit [sic] Sibley makes the statement that he never told me that I would have to lie or make up a story. This is untrue. After I signed the plea Sibley mentioned the classes would be part of my probation. I had no knowledge of this prior to the plea. At this time Sibley told me that I would need to make up a story for the treatment classes and to make it on probation. Had I known this I would not have accepted the plea.

Tomlinson also filed an affidavit from his mother, Brenna Tomlinson, wherein she denies that he ever stated that he might have committed the crime while intoxicated and claims that he has always maintained his innocence. Finally, Tomlinson filed an affidavit from his sister, Melanie Tomlinson, wherein she claimed that S.T. denied Tomlinson had hurt her.

On August 13, 2008, the State moved to strike these affidavits, arguing that they were not allowed under Texas Code of Criminal Procedure article 11.072. The Honorable Joaquin Villareal, a visiting judge, held a hearing on the application that day and the State presented its objections to the court. No evidence was presented at the hearing. Judge Villareal overruled the motion to strike and stated he would grant the writ.

On August 15, 2008, Judge Villareal signed an order granting a new trial and issued findings supporting the order, specifically stating that (1) "before defendant pled guilty he repeatedly told his trial counsel that he was factually innocent"; (2) defense counsel told defendant that if the court asked him whether he was pleading guilty because he was guilty, he was to tell her 'yes', even though he, defendant, knew this was not true"; and (3) "defense counsel did not fully advise Defendant about the consequences of his plea,

5

particularly, the requirements and severe restrictions of sex offender probation." Judge Villareal concluded that Tomlinson received ineffective assistance of counsel and that his guilty plea was, therefore, involuntary.

The same day, the State filed a motion to reconsider and attached an affidavit from Sydney Morris, who was a Community Supervision Officer in Nueces County. She testified that she supervised Tomlinson. Morris stated that on December 16, 2004, "Tomlinson told [her] he didn't remember committing the offense because he was drunk at the time of the offense." However, he also told Morris that "he committed the offense while applying ointment on the victim's genitals and that he had been applying ointment on her genitals 'every weekend' for several months because she had a rash. Specifically, he informed [her] that he had been applying Desitin diaper-rash ointment on a five-year old's genitals when the offense occurred." The State also attached another polygraph examination which concluded that Tomlinson "indicated that if the victimization took place[,] it took place without his knowledge. [His] rationalization is that he was abusing controlled substances at the time of the alleged victimization."

On August 18, 2008, Judge Hassette issued an order granting the State's motion for reconsideration. She also issued two separate orders denying Tomlinson's application for a writ of habeas corpus that same day, supplanting Judge Villareal's prior order.[3] The

---

[3] Tomlinson does not challenge Judge Hassette's ability to revisit and reconsider Judge Villareal's prior order. *See Davis v. Christ Indus., Inc.*, 98 S.W.3d 338, 342 (Tex. App.–Fort Worth 2003, pet. denied) (holding that argument that elected trial judge was precluded from finishing trial started by assigned visiting judge was waived because argument was not jurisdictional and was not timely raised by objection in trial court); *see also In re Tenet Healthcare, Ltd.*, 104 S.W.3d 692, 695 (Tex. App.–Corpus Christi 2003, orig. proceeding) ("This Court further recognizes that denying judges the authority to rule on or dispose of cases merely because an assigned judge has issued a ruling on a pretrial matter would lead to absurd results."). Moreover, Judge Hassette had the benefit of her personal recollection of the prior proceedings, while Judge Villareal did not. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b) (Vernon 2008) ("In making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection.").

first order in the record states that the court is denying the application based on findings of fact and conclusions of law issued along with the order. The findings of fact and conclusions of law in the record consist of a list of proposed findings with blanks for the court to select "adopted" or "refused." Judge Hassette adopted the following findings:

2. After initially telling counsel he was innocent of the charges at issue in this case, the Applicant admitted to Sibley he may have committed the acts alleged in the indictment while drunk or on drugs and that he was therefore unable to deny categorically the allegations in the indictment. . . .

3. The Applicant told Sibley numerous times that he might have committed the acts alleged in the indictment while he was drunk. . . .

4. Following the Applicant's initial claim of innocence in this case, the Applicant also failed a polygraph test concerning whether he was guilty as charged in this case. . . .

5. If Sibley represented to the State or trial court that he believed the Applicant was innocent of the charges in this case, it was before the Applicant failed the polygraph test and/or told Sibley [that he] may have committed the acts alleged in the indictment while drunk or on drugs. . . .

. . .

19. Sibley read and explained the plea papers to the Applicant at great length before the Applicant pleaded guilty. . . .

. . .

22. Sibley advised the Applicant of the consequences of his plea, including the special requirements that would apply to him as a sex offender and that the requirements were subject to change at any time in the future. . . .

23. In accordance with the Code of Criminal Procedure Article 26.13, the trial court admonished the Applicant of the consequences of his plea before he entered his guilty plea. . . .

Judge Hassette, however, refused to enter the following findings:

1. The trial court finds the Applicant, Andrew Tomlinson's, trial counsel,

7

David Sibley, to be a credible witness in this matter. . . .

. . .

17. Sibley never advised the Applicant to lie. . . .

Judge Hassette's conclusions of law state that Tomlinson could not show prejudice under the *Strickland* standard for ineffective assistance of counsel and that his plea of guilty was knowing and voluntary. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). However, Judge Hassette refused to make a finding that Tomlinson received effective assistance of counsel under the *Strickland* standard. *See id.*

The second order states that Tomlinson is "manifestly entitled to no relief" and that the application is denied as "frivolous." This order, however, does not reference findings of fact and conclusions of law. This appeal ensued.[4]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

## A. Standard of Review and Applicable Law

We review a trial court's decision to grant or deny habeas corpus relief for an abuse of discretion. *Lovill v. State*, Nos. 13-07-00529-CR & 13-07-00668-CR, 2008 WL 5275531, at *10 (Tex. App.–Corpus Christi Dec. 22, 2008, pet. granted); *Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.–Dallas 2005, no pet.). We afford almost total deference to the judge's determination of the historical facts that are supported by the record,

---

[4] The parties do not dispute that Judge Hassette had jurisdiction to consider the State's motion for reconsideration and subsequently deny Tomlinson's application for a writ of habeas corpus. Article 11.072 of the Texas Code of Criminal Procedure provides that "[n]ot later than the 60th day after the day on which the state's answer is filed, the trial court shall enter a written order granting or denying the relief sought in the application." TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(a) (Vernon 2005). The State's answer was filed on June 17, 2008. The sixtieth day after June 17, 2008 was Saturday, August 16, 2008. Thus, the deadline to rule was extended until Monday, August 18, 2008. *See* TEX. GOV'T CODE ANN. § 311.014(b) (Vernon 2005). The trial court's orders denying Tomlinson's application were within the statutory period and are properly before this Court. *See, e.g., Awadelkariem v. State*, 974 S.W.2d 721, 728 (Tex. Crim. App. 1998) (providing that a trial court may rescind an order granting or denying a motion for new trial as long as such action occurs within the time provided by the rules for the court to rule on the motion).

8

particularly when the fact findings are based on an evaluation of credibility and demeanor. *Lovill*, 2008 WL 5275531, at *10; *Ex parte Wilson*, 171 S.W.3d at 928. We defer to the trial judge's application of the law to the facts, if the resolution of the ultimate questions turns on an evaluation of credibility and demeanor. *Lovill*, 2008 WL 5275531, at *10; *Ex parte Wilson*, 171 S.W.3d at 928. If the resolution of the ultimate questions turns on an application of the law, we review the determination de novo. *Lovill*, 2008 WL 5275531, at *10; *Ex parte Wilson*, 171 S.W.3d at 928.

An applicant for a writ of habeas corpus claiming ineffective assistance of counsel must demonstrate that (1) his counsel's representation fell below an objective standard of reasonableness; and (2) the defendant suffered prejudice thereby. *Ex parte McFarland*, 163 S.W.3d 743, 751-52 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. at 687-88). In assessing the first prong, "we look to see if counsel was acting as 'a reasonably competent attorney' would under the circumstances." *Id.* at 753 (quoting *Strickland*, 466 U.S. at 687). The applicant "has the burden of proof and must overcome a 'strong presumption that counsel's performance fell within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). The trial counsel's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

The applicant must also prove that counsel's deficient performance prejudiced his defense—he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" means a "probability sufficient to undermine confidence in the outcome." *Id.*

9

A record indicating that the trial court properly admonished the defendant about a guilty plea presents a prima facie showing that the guilty plea was made voluntarily and knowingly. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). Under these circumstances, the burden shifts to the defendant to show that he entered the plea without understanding the consequences. *Id.*; *Arreola v. State*, 207 S.W.3d 387, 391 (Tex. App.–Houston [1st Dist.] 2006, no pet.). "An accused who attests when he enters his plea of guilty that he understands the nature of his plea and that it is voluntary has a heavy burden on appeal to show that his plea was involuntary." *Arreola*, 207 S.W.3d at 391.

A guilty plea is not voluntary if made as a result of ineffective assistance of counsel. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980). When a defendant challenges the voluntariness of a plea entered upon the advice of counsel, and contends that his counsel was ineffective, "the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999) (quoting *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)).

## B.     Advice to Lie About Guilt

Tomlinson first argues that his plea was involuntary because his trial counsel advised him to lie and admit guilt when he was, in fact, innocent. He argues that the trial court's refusal to enter proposed findings 1 and 17, that Sibley was a credible witness and did not advise Tomlinson to lie, created an implied finding of fact that Sibley *did* advise Tomlinson to lie. In response, the State argues that the trial court's refusal to adopt a

10

finding in the State's favor does not result in an implied finding supporting the applicant, who has the burden of proof. Additionally, the State argues that "[a]lthough the State agrees that it would be improper for a defense attorney to advise his client to lie to the court, if the client agrees and does in fact lie to the court about belief in his own guilt, this would amount to an undisclosed *Alford*[5] plea and would not invalidate his conviction[;] [n]or could the appellant show a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,' when the appellant freely decided to lie at trial in order to receive the plea bargain."

First, the record shows, and the trial court found, that Tomlinson was admonished of the consequences of his guilty plea and expressly stated that he was pleading guilty voluntarily. Additionally, the trial court found that Sibley extensively reviewed the plea agreement and advised Tomlinson of the effect of the guilty plea. Thus, Tomlinson bears a heavy burden on appeal to show that his plea was involuntary. *Arreola*, 207 S.W.3d at 391.

We have not located a Texas case that has addressed a factual scenario like the one in this case, and the parties have not cited any. As the Texas Court of Criminal Appeals recognized in *Ex parte Turley*, however, there are several reasons a defendant may have for pleading guilty, many of which have nothing to do with the defendant's guilt or innocence:

> The guilty plea process is not perfect. But guilty pleas allow the parties to avoid the uncertainties of litigation. The decision to plead guilty, as we have seen in this case, may be influenced by factors that have nothing to do with the defendant's guilt. The inability to disprove the State's case, the inability to afford counsel, the inability to afford bail, family obligations, the need to

---

[5] *See North Carolina v. Alford*, 400 U.S. 25, 38 (1970).

return to work, and other considerations may influence a defendant's choice to plead guilty or go to trial.

109 S.W.3d 388, 393 (Tex. Crim. App. 2002). For further example, the court noted that

*innocent* persons often plead guilty for various reasons:

> An innocent person may want to take advantage of a discounted sentence in a plea bargain, rather than gamble on a far greater sentence if a mistaken verdict is returned. Or a person may not know what he is admitting and accept his attorney's advice that a guilty plea is prudent. Or a person may be under some pressure to accept responsibility for something he did not do, in order to protect someone else, whom he loves or fears.

*Id.* at 393 n.2. And in an opinion concurring with the denial of the State's motion for

rehearing in *Turley*, Judge Price, the author of the majority opinion, further explained that

an innocent person's guilty plea may be freely, intelligently, and voluntarily made:

> Our system encourages plea bargains that are freely, intelligently, and voluntarily made. *See North Carolina v. Alford*, 400 U.S. 25, 31-32, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Over 90% of all criminal convictions are obtained through plea bargains. Surely we are not so naive as to believe that each and every one of these defendants is pleading guilty simply because he knows in his heart that he is guilty as sin and he wants to throw himself on the court's mercy, divinely oblivious to any punishment that he might receive. We long ago recognized that the single most important reason that a defendant pleads guilty is because he has an advantageous plea bargain with the State which he believes minimizes his risks. *See Cruz v. State*, 530 S.W.2d 817, 821-22 (Tex. Crim. App. 1975) (noting that defendants "commonly deny during an Art. 26.13 . . . inquiry that any promises have been made that induced a plea of guilty, when in fact the prosecutor has promised to recommend a certain sentence in exchange for the plea. The deceptive denial stems from the fear that the trial court will not accept the plea if the question is answered truthfully"). Were this not so, the Legislature would not have enacted a statute that explicitly permits a defendant charged with a felony to withdraw his guilty plea if the trial judge refuses to follow the plea agreement. *See* TEX. CODE CRIM. PROC. [ANN.] art. 26.13. If a defendant were pleading guilty solely because he is guilty and for no other reason, any plea bargain would be irrelevant to his decision, and thus it would be irrelevant that the trial judge refuses to follow it.
>
> Our criminal justice system is amply protected by requiring that a guilty plea be freely, intelligently, and voluntarily entered and that there exist some evidence to support that plea. *Alford*, 400 U.S. at 31, 91 S.Ct. 160. **"An**

12

individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37, 91 S.Ct. 160.

*Id.* at 405 (Price, J., concurring in denial of rehearing).

Although Tomlinson argues that the trial court's refusal to adopt findings 1 and 17 constitute a finding of the opposite of the proposed findings, those findings would not mandate a reversal in Tomlinson's favor because the trial court also found that his plea was voluntary and that he failed to show prejudice under *Strickland*. We agree with these findings. In this case, Tomlinson clearly pleaded guilty in order to avoid a trial and the possibility of incarceration for a lengthy period of time, reasons entirely independent of his guilt or innocence. Although Tomlinson alleges that Sibley advised him to lie about his guilt in order to accept the plea bargain, if Tomlinson truly was innocent, then he knew at the time of the plea bargain that he would be lying to the court if he admitted his guilt. In fact, Tomlinson was placed under oath before he represented to the court that he was guilty. Tomlinson, knowing he would be lying, chose to plead guilty to the charges and to admit guilt—and he achieved the desired result, which was eight years of deferred-adjudication community supervision. Under these circumstances, we cannot say that his guilty plea was the result of the erroneous advice of counsel to such an extent that it rendered his plea involuntary or that, absent the advice of counsel, he would not have pleaded guilty in order to obtain a favorable plea bargain. *See, e.g., Watts v. State*, 981 So. 2d 1034, 1040 (Miss. Ct. App. 2008) (holding that ineffective assistance claim failed, despite allegation that attorney advised defendant to lie about his guilt to obtain plea bargain, where record showed that defendant was aware of the consequences of plea and failed to show that he would not have pleaded guilty but for his counsel's advice); *Anderson v. State*, 746 N.W.2d

13

901, 908 (Minn. Ct. App. 2008) (holding that "[t]he alleged advice to lie under oath should be rejected by even the least enlightened defendant in the face of her fundamental duty to tell the truth under oath" and that the defendant was not prejudiced by attorney's advice to lie about her guilt in order to receive plea bargain because the confession served her intended purpose by obtaining the plea bargain). Accordingly, the trial court did not err by finding that the plea was voluntary and that Tomlinson failed to establish the second prong of *Strickland*.[6]

## C. Counseling Requirement

Tomlinson next alleges that his plea was not knowingly entered into because his lawyer did not advise him until after the plea that his community supervision would require him to attend counseling and make a full confession of the acts alleged in the indictment. In this respect, Tomlinson has no "implied finding" on which to base his argument, and in fact, the trial court found that Sibley (1) "read and explained the plea papers to the Applicant at great length before the Applicant pleaded guilty"; and (2) "Sibley advised the Applicant of the consequences of his plea, including the special requirements that would apply to him as a sex offender and that the requirements were subject to change at any time in the future." Tomlinson does not challenge these findings except to point to his contrary testimony that he did not know about the counseling requirement and would not have pleaded guilty had he known.

---

[6] Moreover, there was evidence of guilt that the trial court recognized in its findings of fact, including that: (1) Tomlinson admitted, on numerous occasions, that he may have committed the acts while drunk or on drugs and could not categorically deny the allegations; and (2) Tomlinson failed a polygraph test concerning whether he was guilty as charged in this case. *See Alford*, 400 U.S. at 38 ("In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it."); *see also Mendez v. State*, 138 S.W.3d 334, 344 (Tex. Crim. App. 2004).

Again, Tomlinson bears a heavy burden to show his plea was involuntary. *Arreola*, 207 S.W.3d at 391. At most, Tomlinson points to a conflict between his own testimony and Sibley's testimony. We must defer to the trial court's findings of fact, particularly when credibility is at issue. *Lovill*, 2008 WL 5275531, at *10; *Ex parte Wilson*, 171 S.W.3d at 928. While the trial court refused to expressly find that Sibley was a credible witness for all purposes, it expressly found that Sibley explained all the consequences of the plea. Accordingly, we defer to the trial court's resolution of the factual dispute and hold that Tomlinson did not meet his burden to prove that his plea was involuntary. *Lovill*, 2008 WL 5275531, at *10; *Ex parte Wilson*, 171 S.W.3d at 928.

## III. CONCLUSION

Having overruled Tomlinson's issue, we affirm the trial court's order denying his application for a writ of habeas corpus.

GINA M. BENAVIDES,
Justice

Publish.
*See* TEX. R. APP. P. 47.2(b)

Opinion delivered and filed this
the 28th day of August, 2009.

15