

# NUMBER 13-10-00409-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

HOWARD O'BRYAN,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

## On appeal from the 19th District Court of McLennan County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant, Howard O'Bryan, entered an open plea of guilty to two counts of

aggravated sexual assault of a child with a deadly weapon, *see* TEX. PENAL CODE ANN.

§ 22.021 (Vernon Supp. 2010), and two counts of indecency with a child.  S*ee id.*

§ 21.11 (Vernon Supp. 2010).[1] The trial court sentenced O'Bryan to life imprisonment for each count of aggravated assault. For each count of indecency with a child, the trial court imposed a sentence of twenty years' confinement. The trial court ordered all four sentences to run consecutively. By six issues, O'Bryan contends that: (1) his guilty pleas were not knowing and voluntary (issues one and two); (2) the trial court failed to comply with article 26.13 of the Texas Code of Criminal Procedure, *see* TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2010); (3) the trial court erred by not conducting a hearing on his motion for new trial; (4) the trial court improperly ordered him to pay fees relating to his court-appointed attorney and investigator because he is indigent; and (5) the trial court erred in signing four separate orders for funds to be withdrawn from his inmate-trust-fund account. We affirm the judgment in part and reverse and remand in part.

## I. BACKGROUND

On June 8, 2010, O'Bryan entered an open plea of guilty to two counts of aggravated sexual assault of a child with a deadly weapon and two counts of indecency with a child. The State presented, among other things, O'Bryan's judicial confession and a report written by Robin Mayfield, R.N., a sexual assault nurse examiner.

Mayfield documented that she interviewed O'Bryan's twelve-year-old biological daughter, B.B.S. According to the report, B.B.S. stated that when she went to O'Bryan's bedroom, he closed the door, locked it, and threw her on the bed. B.B.S. told

---

[1] This case is before us on transfer from the Tenth Court of Appeals in Waco, Texas, pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX GOV'T CODE ANN. § 73.001 (Vernon 2005).

Mayfield that she fought with O'Bryan, but he managed to take off her clothes, threw her against the wall, picked her up, and threw her in the closet. B.B.S. claimed that O'Bryan then "raped" her by "putting his middle" inside her "middle part." Mayfield documented that B.B.S. identified on a diagram the penis as a male's middle part and the vagina as a female's middle part.

B.B.S. told Mayfield that after O'Bryan raped her, he grabbed a knife and told her that they were both "going to die." B.B.S. claimed that O'Bryan put the knife on her neck and when she attempted to defend herself, he cut her neck and fingers and "poked her stomach" with the knife. B.B.S. stated that O'Bryan warned her not to tell anyone what had happened and that she should say that her uncle "touched" her. B.B.S. claimed that O'Bryan then told B.B.S.'s grandmother that B.B.S's uncle was a pervert and "was going to be in trouble."

Mayfield documented that B.B.S. had several injuries including the following:

> 3 cuts with three stitches each on thumb [and] index finger. 4cm cut to wrist. 1.5cm cut on index finger (in addition to cut with sutures). Red petechia bruising on neck. 1.5 open oozing cut on neck. 1 cm cut on chest. Red, blue, purple, brown, [and] green bruised areas [and] red abrasions on legs. Tender area on back.

Mayfield also noted that she acquired vaginal swabs from B.B.S. DNA reports from the Texas Department of Public Safety's crime laboratory were admitted into evidence. The reports showed that sperm was detected on B.B.S.'s vaginal swabs and that "the DNA profile from the sperm fraction of [B.B.S's vaginal swab] is consistent with a mixture of the victim and [O'Bryan]. . . ."

3

The trial court accepted O'Bryan's guilty pleas to all four counts. B.B.S., among others, then testified at the punishment phase of O'Bryan's trial. After hearing the evidence, the trial court sentenced O'Bryan to two life sentences for each count of aggravated sexual assault of a child with a deadly weapon and twenty years' imprisonment for each count of indecency with a child. The trial court ordered that the sentences be cumulated. This appeal ensued.

## II. VOLUNTARINESS OF GUILTY PLEA

By his first issue, O'Bryan contends that his plea was involuntary and in violation of his due process rights because: (1) the trial court did not admonish him of the possibility that his sentences could be cumulated; (2) the trial court did not advise him that the minimum punishment for aggravated sexual assault of a child with a deadly weapon was twenty-five years until after the venire had seen him in his "jail clothes"; and (3) "the trial court improperly forced him to 'acknowledge his guilt' in order to accept the guilty pleas." By his second issue, O'Bryan contends that his plea was involuntary in violation of the Texas Constitution's Due Course of Law Clause. *See* TEX. CONST. art. I, § 13.

## A. Standard of Review and Applicable Law

It is a violation of due process of law for a trial court to accept a defendant's guilty plea without an affirmative showing "spread on the record" that the guilty plea is "intelligent and voluntary." *Aguirre-Mata v. State*, 125 S.W.3d 473, 474 (Tex. Crim. App. 2003) (en banc) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). If a defendant is made fully aware of the direct consequences of a guilty plea, it is generally

4

considered voluntary.[2]  *State v. Jimenez*, 987 S.W.2d 886, 888 (Tex. Crim. App. 1999) (en banc); *McGrew v. State*, 286 S.W.3d 387, 391 (Tex. App.–Corpus Christi 2008, no pet.).   A plea "will not be rendered involuntary by lack of knowledge as to some collateral consequence."[3]  *Jimenez*, 987 S.W.2d at 888.  In *McGrew v. State*, this Court concluded that the imposition of consecutive sentences is not a direct consequence but instead a collateral consequence of a guilty plea; therefore, a trial court's failure to warn of such a possibility does not render the plea involuntary in violation of the defendant's due process rights.[4]  286 S.W.3d at 391.

"A record indicating that the trial court properly admonished the defendant about a guilty plea presents a prima facie showing that the guilty plea was made voluntarily and knowingly."  *Ex parte Tomlinson*, 295 S.W.3d 412, 419 (Tex. App.–Corpus Christi 2009, no pet.) (citing  *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998)); *Pena v. State*, 132 S.W.3d 663, 666 (Tex. App.–Corpus Christi 2004, no pet.).  The

---

[2] "A consequence has been defined as 'direct' where it is 'definite, immediate and largely automatic.'"  *State v. Jimenez*, 987 S.W.2d 886, 889 n.5 (Tex. Crim. App. 1999) (en banc); *McGrew v. State*, 286 S.W.3d 387, 391 (Tex. App.–Corpus Christi 2008, no pet.).

[3] "A consequence has been defined as 'collateral,' rather than 'direct,' where 'it lies within the discretion of the court whether to impose it,' or where 'its imposition is controlled by an agency which operates beyond the direct authority of the trial judge.'"  *Jimenez*, 987 S.W.2d at 889 n.6; *McGrew*, 286 S.W.3d at 391.

[4] No other Texas court has determined whether the failure to warn a defendant of the possibility that sentences could be cumulated violates due process and renders a guilty plea involuntary.  "However, many federal circuits have held that the imposition of consecutive sentences is a collateral consequence of a guilty plea, and the failure to warn of this possibility does not render the plea involuntary in violation of the defendant's due process rights."  *McGrew*, 286 S.W.3d at 391 (citing *Wilson v. McGinnis*, 413 F.3d 196, 199 (2nd Cir. 2005); *United States v. Hurlich*, 293 F.3d 1223, 1231 (10th Cir. 2002); *United States v. Hernandez*, 234 F.3d 252, 256 (5th Cir. 2000); *United States v. Ferguson*, 918 F.2d 627, 631 (6th Cir. 1990); *United States v. Wills*, 881 F.2d 823, 827 (9th Cir. 1989); *United States v. Ray*, 828 F.2d 399, 417-19 & n.19 (7th Cir. 1987)).

burden then shifts to the defendant to show that he entered the plea without understanding the consequences of his action and he suffered harm. *Pena*, 132 S.W.3d at 666. A defendant who pleads guilty and attests that his plea is voluntary has a heavy burden on appeal to show that the plea was involuntary. *Id.*

**B.    Trial Court Error**

O'Bryan first argues that his pleas were involuntary because the trial court failed to admonish him that his sentences could be cumulated. However, the trial court's ability to cumulate a defendant's sentences is a collateral consequence of a guilty plea. *See McGrew*, 286 S.W.3d at 391; *see also Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997) (recognizing that courts have characterized the possibility of imposition of consecutive sentences as a collateral consequence "of which a defendant does not have to be knowledgeable before his plea is considered knowing and voluntary"). "[A] guilty plea is considered voluntary if the defendant was made fully aware of the direct consequences. It will not be rendered involuntary by lack of knowledge as to some collateral consequence." *See McGrew*, 286 S.W.3d at 391 (quoting *Jimenez*, 987 S.W.2d at 888). Therefore, O'Bryan has not established that the trial court's failure to warn him of that possibility rendered his pleas involuntary in violation of due process. *See id.*

Next, O'Bryan argues that his pleas were involuntary because "he was not advised of the 25-year minimum punishment as to Count[s] 1 and 4 until after the venire had already seen him in his jail clothes and the trial court made it clear that if there was going to be a trial, it was going to be that day . . . ." O'Bryan appears to argue that his

plea was rendered involuntary because the trial court somehow prevented him from changing his plea to "not guilty" by stating that the trial would take place that day.[5] O'Bryan does not provide a clear and concise argument with citation to appropriate authority to support his argument that his plea was rendered involuntary because the jury panel saw him in his jail clothes before the trial court admonished him on the range of punishment. *See* TEX. R. APP. P. 38.1(i). Therefore, we conclude that he has waived this argument on appeal. *See id.*

Nevertheless, we conclude that O'Bryan's argument is meritless. After pleading not guilty on May 14, 2010, O'Bryan waived his right to a jury trial and requested a bench trial. The next day, O'Bryan appeared in court in his jail clothes. The record reveals that the trial court began the proceedings in another courtroom because the trial court was concerned that O'Bryan was wearing his jail clothes. The trial court explained that it intended to make absolutely sure that O'Bryan was waiving a jury trial before proceeding to its own courtroom. O'Bryan advised the trial court that he understood that he was waiving his right to a jury trial on all four counts. The trial court again asked O'Bryan if he wanted to waive a jury trial for both the guilt/innocence stage of trial and, if found guilty, the punishment stage. O'Bryan stated that he did.

O'Bryan then notified the trial court that he wanted to plead guilty. At that point, the trial court allowed O'Bryan to be transported to his courtroom. Presumably, the jury

---

[5] O'Bryan never stated or indicated that he wanted to change his plea to not guilty during his plea hearing. In fact, he insisted that he wanted to plead guilty, even after the trial court informed him that the range of punishment for aggravated sexual assault of a child with a deadly weapon is twenty-five years to ninety-nine years or life. The trial court even informed O'Bryan that he was free to change his plea to not guilty once he understood the correct ranges of punishment on all four counts.

panel saw O'Bryan in his jail clothes while he was being transported. The proceedings continued in the trial court's courtroom, O'Bryan pleaded guilty outside the jury panel's presence, and the trial court released the panel.[6]

In this case, O'Bryan was not compelled by the trial court or anyone else to be tried in jail clothes. *See Randle v. State*, 826 S.W.2d 943, 944-45 (Tex. Crim. App. 1992) (providing that an accused should not be compelled to stand trial in prison attire after a timely objection because "[s]uch a compulsion would violate the defendant's right to a fair trial and his right to be presumed innocent"); *Kimble v. State*, 537 S.W.2d 254, 254-55 (Tex. Crim. App. 1976) (stating that the accused has a right not to be tried in jail clothes because of the possible infringement of the accused's presumption of innocence); *Gibson v. State*, 233 S.W.3d 447, 453 (Tex. App.–Waco 2007, no pet.) ("Requiring a defendant to be tried in jail clothing infringes upon the fundamental right to a presumption of innocence.") (citing *Estelle v. Williams*, 425 U.S. 501, 512 (1976)). Moreover, the jury panel that allegedly saw O'Bryan in his jail clothes did not participate in any way in O'Bryan's trial.[7] Finally, the accused must "object to being tried in jail garments, just as he must invoke or abandon other rights." *Estelle*, 425 U.S. at 508 (stating that it is not an uncommon defense tactic to produce the defendant in jail clothes in hope of eliciting sympathy from the jury). If O'Bryan believed, as he argues

---

[6] Our review of the record indicates that the jury panel was not present when O'Bryan pleaded guilty.

[7] The trial court dismissed the jury panel after explaining that O'Bryan had waived his right to a jury trial.

on appeal, that the jury panel should not have seen him in jail clothes, he should have objected at that time. *See id.*

Finally, O'Bryan appears to argue that his pleas were involuntary because he was not required to "acknowledge his guilt" to enter a guilty plea. During O'Bryan's plea hearing, the trial court asked him if he was pleading guilty because he committed the crime. O'Bryan responded that he wanted to plead guilty, but did not want to "say" that he was guilty of the crimes.[8] The trial court replied:

> It's pretty black and white, actually. There is only one way to do this. You either plead guilty and acknowledge your guilt or we go to a jury trial—or to a trial and we determine whether or not—from the facts and the evidence, whether you're guilty or not. It does not matter to me how you want to do it, but I can't do it for you. You have to make the decision.[9]

O'Bryan, citing *North Carolina v. Alford*, claims that the trial court should have allowed him to plead guilty without admitting or acknowledging his guilt. 400 U.S. 25, 36 (1970). In *Alford*, the defendant claimed he was innocent, but the trial court still accepted his guilty plea to second-degree murder. *Id.* at 28. The defendant pleaded

---

[8] We note that the record contains a signed stipulation of evidence and judicial confession signed by O'Bryan. In this document, O'Bryan stated that he was pleading guilty because he was guilty of the crimes. O'Bryan then stipulated that he had committed all four counts as stated in the indictment.

[9] O'Bryan then stated, "Guilty." This colloquy followed:

| The Court: | And I want to ask you once again, are you pleading guilty because of any threats or force used against you or promises made to you? |
|---|---|
| [O'Bryan]: | No, sir. |
| The Court: | Is the sole reason—that means the only reason—you're pleading guilty because you committed the crime to which you're pleading? |
| [O'Bryan]: | Yes. |

9

guilty to second-degree murder to avoid going to trial on a first-degree murder charge and the possibility of receiving the death penalty. *Id.* at 31. After he was convicted of second-degree murder, the defendant maintained that his guilty plea was coerced and sought habeas corpus relief. *Id.* at 29. The United States Supreme Court upheld Alford's conviction stating that "an individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37.

In *Alford*, the Supreme Court concluded that an express admission of guilt is not constitutionally required and that the defendant's guilty plea may still be entered voluntarily, knowingly, and understandingly without such an admission. *Id.* It did not conclude, as O'Bryan appears to argue, that a guilty plea is rendered invalid or involuntary if a trial court refuses to accept a defendant's guilty plea when that defendant refuses to admit or acknowledge his guilt. O'Bryan cites no authority, and we find none, supporting a conclusion that a guilty plea is rendered involuntary when the trial court requires the defendant to admit or acknowledge that he is guilty.[10] *See Thornton v. State*, 601 S.W.2d 340, 347 (Tex. Crim. App. 1979) ("'[I]t is settled that regardless of the depth of one's desire to enter a plea of guilty an accused does not have a constitutional right to have it accepted by the trial court.'") (quoting *Alford*, 400 U.S. at 38 n.11.); *Mendez v. State*, 138 S.W.3d 334, 344 n.42 (Tex. Crim. App. 2004) (same); *see also Ex parte Tuley*, 109 S.W.3d 388, 405 (Tex. Crim. App. 2002) (Price, J.,

---

[10] Further, we note that O'Bryan does not explain how his guilty plea was rendered involuntary because he was not allowed to deny his guilt and enter a guilty plea. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made . . . .").

concurring) (explaining that an "honorable trial judge" would probably not accept a guilty plea from a defendant who states that he is not guilty of the crime). Therefore, we are not persuaded by O'Bryan's argument. We overrule O'Bryan's first issue.

## C.      Due Course of Law

By his second issue, O'Bryan generally asserts that his pleas were involuntary under the Texas Constitution's due course of law provision because the trial court did not advise him that his sentences could be cumulated. O'Bryan invites this Court to "provide a more stringent review [of the trial court's failure to admonish him of the possibility that his sentences could be cumulated] under a due course of law analysis." Citing *Anderson v. State*, O'Bryan asserts that the trial court "must do more than is required to meet the minimum standards of due process of law when a defendant pleads guilty in a felony case."[11]   182 S.W.3d 914, 918 (Tex. Crim. App. 2006). However, in *Anderson*, the court of criminal appeals explained that the trial court must do more because in Texas it has a statutory obligation to provide the proper admonishments under article 26.13. *See id.* (citing TEX. CODE CRIM. PROC. ANN. art. 26.13). Nowhere in *Anderson* did the court of criminal appeals state that the due course of law provision requires a "more stringent review" in cases such as this. In fact, the court did not even mention the Due Course of Law clause in *Anderson*. We overrule O'Bryan's second issue.[12]

---

[11] O'Bryan cites no other authority and provides no other basis for this assertion.

[12] The Texas Constitution should be interpreted as providing broader protection than its federal counterpart only if such an interpretation has "firm support in state history or policy." *Cobb v. State*, 85 S.W.3d 258, 267-68 (Tex. Crim. App. 2002). Thus, we should interpret the Texas Constitution as

11

## III.     COMPLIANCE WITH ARTICLE 26.13

By his third issue, O'Bryan contends that the trial court did not comply with article 26.13 of the code of criminal procedure because it failed to admonish him that his sentences could be stacked. O'Bryan acknowledges that the court of criminal appeals held in *Simmons v. State* that article 26.13 does not require a trial court to admonish the defendant that his sentences may be cumulated. *See* 457 S.W.2d 281, 283 (Tex. Crim. App. 1970). However, O'Bryan argues that this Court is not bound by this holding because the legislature changed the language in article 26.13 since *Simmons*.

O'Bryan states that "[a]rticle 26.13, as written at the time did not specifically require that a defendant be admonished as to the range of punishment, only that he be admonished as to the 'consequences' of his plea." This is the extent of O'Bryan's argument.

We note that when *Simmons* was written, article 26.13 stated that a defendant pleading guilty "shall be admonished by the court of the consequences." *See* Act of Jan. 1, 1966, 59th Leg., R.S., ch. 722, § 1, art. 26.13, 1965 Tex. Gen. Laws, 317, 427 (amended 1975) (current version at TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1)). However, the court of criminal appeals still found that this language did not require the trial court to admonish a defendant of the possibility that his sentences could be cumulated. *See Simmons,* 457 S.W.2d at 283; *see also McGrew*, 286 S.W.3d at 391

providing rights not found in the federal constitution "only when unique aspects of Texas history, jurisprudence, or law support that separate interpretation." *Id.* at 268. O'Bryan neither claims nor cites authority providing that unique aspects of Texas history, jurisprudence, or law support a conclusion that the Texas Constitution's due course of law provision affords more protection than the due process clause in cases where the defendant pleads guilty and is not advised that his sentences could be cumulated.

(concluding that the possibility of cumulative sentences is a collateral consequence of a guilty plea).

Article 26.13 now requires, more specifically, for the trial court to admonish a defendant pleading guilty of "the range of the punishment attached to the offense." *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1). O'Bryan cites no authority, and we find none, supporting a conclusion that the legislature intended that article 26.13's admonishment on the range of punishment requires the trial court to admonish the defendant of the possibility that the sentences may be cumulated. *See Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009) ("Under the canons of statutory construction, we are to construe a statute according to its plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the legislature could not have intended. To do so, we focus on the literal text of the statutory language in question, reading it in context and construing it according to the rules of grammar and common usage.") (internal quotations omitted); *see also Barrow v. State*, 207 S.W.3d 377, 379 (Tex. Crim. App. 2006) (providing that the decision to cumulate a defendant's sentence does not "raise the 'statutory maximum' punishment" for the offense); *Ex parte Williams*, 704 S.W.2d 773, 775 (Tex. Crim. App. 1986) ("[T]he trial court is not required to admonish as to its discretion to cumulate sentences.") (citing *Simmons*, 457 S.W.2d at 286). Therefore, we overrule O'Bryan's third issue.

## IV. FAILURE TO CONDUCT MOTION FOR NEW TRIAL HEARING

By his fourth issue, O'Bryan contends that the trial court erred in failing to conduct a hearing on his motion for new trial. Specifically, O'Bryan argues that the allegations in his affidavit

> gave rise to reasonable grounds of ineffective assistance based on (1) serious misinformation communicated to O'Bryan by his trial counsel regarding the sentence he would receive if he pled guilty, (2) counsel's failure to request a continuance after O'Bryan was seen by the venire in his jail clothes, and then learned later that . . . the minimum sentence was 25 years—not five years, and (3) counsel's failure to make O'Bryan aware that his sentences could be stacked.

## A. Standard of Review and Applicable Law

A defendant is entitled to a hearing on his motion for new trial if the motion and accompanying affidavits raise matters not determinable from the record and the defendant "establishes the existence of 'reasonable grounds' showing that [he] could be entitled to relief." *Smith v. Texas*, 286 S.W.3d 333, 338-39 (Tex. Crim. App. 2009) (internal quotations omitted). Although the affidavits are not required to establish a prima facie case, a hearing is not required if the affidavits are conclusory in nature and unsupported by the facts. *Id.* at 339.

We review the trial court's denial of a motion for new trial hearing under an abuse of discretion standard. *Id.* A trial court abuses its discretion in denying a hearing on the defendant's motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). "Our review, however, is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and

14

reasonable, meaning they could entitle the defendant to relief." *Smith*, 286 S.W.3d at 340.

The defendant may raise a claim of ineffective assistance of counsel in a motion for new trial. *Id.* "Under *Strickland v. Washington*, a defendant seeking to challenge counsel's representation must establish that his counsel's performance (1) was deficient, and (2) prejudiced his defense." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In order to establish that he was prejudiced by trial counsel's alleged deficient performance, "the appellant must show there is a reasonable probability that, but for his counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* To be entitled to a hearing on his motion for new trial on the basis that his trial counsel rendered ineffective assistance, the "defendant must allege sufficient facts from which a trial court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Id.*

## B. Discussion

O'Bryan claims that the following allegations in his affidavit "gave rise to reasonable grounds of ineffective assistance": (1) "I went to ply [sic] hearing they offer 40 yrs[.] [H]e told me [i]f I ply [sic] guilty [t]hat the Judge would probly [sic] give me 10-12 yrs"; (2) "I went to court[.] Lawyer told me to plead guilty[.] I was in jail clothes and new [sic] that I should be in [p]lain clothes for jury trial[.] [T]hey seen me and I had no other choice [b]ut to have Judge Trail [sic]"; (3) "[Trial Counsel] said my case [r]anged 5-

99 got in there[.]  After pleading guilty my sentences carried 25 to [l]ife";[13] and (4) "[Trial Counsel] said the judge would only give me 25 yrs [n]o more than 30 yrs."

Even erroneous predictions by trial counsel regarding the punishment a defendant may receive do not amount to ineffective assistance if the trial court has properly admonished the defendant.  *Messer v. State*, 757 S.W.2d 820, 826 (Tex. App.– Houston [1st Dist.] 1988, pet. ref'd).  Here, the trial court properly admonished O'Bryan on the correct range of punishment on all four counts.  In fact, during the plea hearing, when O'Bryan stated that he had been told that the range of punishment for aggravated sexual assault of a child with a deadly weapon was between five and ninety-nine years, the trial court corrected this misinformation and clarified that the correct range of punishment was between twenty-five and ninety-nine years or life.  The trial court also informed O'Bryan that he was free to change his plea to not guilty now that he was aware of the correct range of punishment for that offense.  O'Bryan stated, "I plead guilty.  I mean, I just didn't understand.  Something was told to me different.  That's why—whether it was a mistake or not, it was never brought back to my attention.  Okay?"  The trial court advised O'Bryan that it was bringing the proper range of punishment to his attention, and O'Bryan stated that he understood "that, through [his] lawyer."  The trial court then repeated that the range of punishment for aggravated sexual assault of a child with a deadly weapon was between twenty-five and ninety-nine years or life and stated that the range of punishment for indecency with a child was not

---

[13] We note that the trial court explained the correct range of punishment for aggravated sexual assault of a child with a deadly weapon to O'Bryan before he pleaded guilty.

16

less than two years or more than twenty years. The trial court asked O'Bryan if understanding the ranges of punishment, he still insisted upon waiving all of his rights and pleading guilty to all four counts in the indictment. O'Bryan replied, "Yes, sir."

Based on our review of the record, the trial court explained the full range of punishment to O'Bryan and ensured that O'Bryan understood the range of punishment for all four counts. After stating that he understood the range of punishment for each count, O'Bryan still pleaded guilty. Therefore, in view of the clear admonitions given by the trial court before the plea, which O'Bryan stated he understood, we cannot conclude that his plea was involuntary and that he was denied effective assistance of counsel. *See Messer*, 757 S.W.2d at 826.

Furthermore, in his affidavit, O'Bryan did not address the prejudice prong—O'Bryan never claimed that but for trial counsel's alleged erroneous predictions regarding his punishment, there was a reasonable probability that he would not have pleaded guilty. *See Smith*, 286 S.W.3d at 340. In fact, as previously discussed, the record shows that the trial court correctly stated the ranges of punishment for all four counts, and O'Bryan stated that he understood those ranges and still proceeded to plead guilty. Because O'Bryan did not meet his burden of alleging sufficient facts from which the trial court could have reasonably concluded that, but for counsel's failure, there was a reasonable likelihood that the outcome of his trial would have been different, the trial court did not abuse its discretion in refusing to hold a motion for new trial hearing on that basis. *Id.*

Next, O'Bryan argues on appeal that he was entitled to a hearing on his motion for new trial because his trial counsel rendered ineffective assistance by failing to request a continuance after O'Bryan was seen by the venire in his jail clothes. Because of the nature of O'Bryan's complaint on appeal—that the trial court failed to hold a hearing on his motion for new trial—he must have raised his appellate complaint at some point during the motion for new trial proceedings to preserve it for appellate review. *Keeter v. State*, 175 S.W.3d 756, 759-60 (Tex. Crim. App. 2005) (concluding that the appellant did not preserve for appellate review his complaint that the trial court erred in failing to grant his motion for new trial on the basis of a *Brady* violation because he did not raise that complaint in his motion for new trial); *see* TEX. R. APP. P. 33.1(a)(1)(A) (providing, in relevant part, that for a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court, which "states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"). O'Bryan stated in his motion for new trial "that the jury in waiting had already seen [him] in his jail clothes (which led [him] to believe he had no choice but to plead guilty)." In his affidavit, he stated, "I was in jail clothes and new [sic] that I should be in [p]lain clothes for jury trial[.] [T]hey seen me and I had no other choice [b]ut to have Judge Trail [sic]."[14] However, O'Bryan never complained either in his motion for new trial or in his affidavit that he was entitled to a

---

[14] We note that O'Bryan had waived his right to a jury trial before he entered his guilty pleas. In addition, as discussed earlier, the trial court determined that O'Bryan was not requesting a jury trial before the jury venire allegedly saw him in his jail clothes.

18

hearing on his motion for new trial on the basis he argues on appeal—that his trial counsel failed to request a continuance after the venire saw him in his jail clothes. Because O'Bryan did not raise his appellate argument at any point during the new trial proceedings, he has not preserved this argument for our review. *See Keeter*, 175 S.W.3d at 759-60; *see also Gallo v. State*, 239 S.W.3d 757, 768 (Tex. Crim. App. 2007) (providing that appellate arguments must comport with objections at trial); *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005) (setting out that appellant did not preserve issue for appellate review because his argument at trial did not comport with his argument on appeal).

Finally, O'Bryan did not argue in his motion for new trial or in his affidavit, as he argues on appeal, that he was entitled to a new trial because his trial counsel rendered ineffective assistance by failing to inform him that his sentences could be stacked. Therefore, he has not preserved this issue for our review. *See Keeter*, 175 S.W.3d at 759-60; *see also Gallo*, 239 S.W.3d at 768; *Swain*, 181 S.W.3d at 367.

Accordingly, we cannot conclude that the trial court abused its discretion in denying a hearing on O'Bryan's motion for new trial on grounds that were not presented to it. *See Keeter*, 175 S.W.3d at 760 ("All a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.") (internal quotations omitted); *Elliot v. State*, 56 S.W.3d 780, 783 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd) ("Under our adversary system, it is incumbent upon litigants to frame the issues

for the trial court and to do so at a time and in a manner that will give the trial court an opportunity to respond to the complaint and, if possible, cure any error.  Reversing for error that was not brought to the trial court's attention, in effect, permits the party challenging the trial court's ruling to second-guess his own trial strategy and tactical decisions after they fail to produce the desired result.  Moreover, there is an inherent incongruity in reversing a trial court based on an 'error' when it was never given an opportunity to make a 'correct' decision.").  We overrule O'Bryan's fourth issue.

## V.     ATTORNEY'S FEES AND INVESTIGATOR'S FEES

By his fifth issue, O'Bryan contends that the trial court erred in assessing court-appointed attorney's fees and court-appointed investigator's fees.  The State concedes that there is no evidence of O'Bryan's ability to pay the attorney's or investigator's fees.

A defendant who is determined by the trial court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case, unless a material change in the defendant's financial circumstances occurs.  TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (Vernon Supp. 2010).  An indigent defendant is entitled to court-appointed investigative services in the same way that he is entitled to court-appointed counsel. TEX. CODE CRIM. PROC. ANN. art. 26.05(d) (Vernon Supp. 2010).  In order to assess attorney's fees and investigator's fees as court costs, the trial court is required to determine that the defendant has financial resources that would enable him to offset in part or whole the costs of the services provided.  *Id.* art. 26.05(g).

On December 7, 2008, the trial court determined that O'Bryan was indigent and appointed trial counsel to represent him.  The trial court also appointed appellate

counsel to represent O'Bryan on appeal. There is no evidence in the record that a material change in O'Bryan's financial circumstances occurred; therefore, it is presumed that O'Bryan remained indigent throughout the proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 26.06(p). Furthermore, the record before us contains no evidence that O'Bryan had any financial resources that would enable him to offset in part or whole the fees assessed by the trial court. *See Mayer v. State*, 274 S.W.3d 898, 901 (Tex. App.–Amarillo 2008), *aff'd*, 309 S.W.3d 552 (Tex. Crim. App. 2010); *see also Morris v. State*, No. 10-10-00158-CR, 2010 Tex. App. LEXIS 9684, at *7 (Tex. App.–Waco Dec. 8, 2010, no pet.) (mem. op., not designated for publication) (concluding that the evidence was insufficient for the trial court to order the defendant to pay attorney's and investigator's fees because no evidence was presented to the trial court that the defendant had financial resources that enabled him to pay all or any part of the fees); *Willis v. State*, No. 10-09-00420-CR, 2010 Tex. App. LEXIS 8255, at *2 (Tex. App.–Waco Oct. 13, 2010, no pet.) (mem. op., not designated for publication) ("If the State fails to present evidence that the defendant is able to pay all or part of his court-appointed attorney's fees, then the trial court commits error by assessing any part of those fees as costs of court."). In fact, the trial court never made a determination that O'Bryan had the financial resources enabling him to pay the fees. Without evidence to demonstrate that O'Bryan had the financial resources to offset the costs of the attorney's fees and investigator's fees, the trial court erred in ordering reimbursement of those fees. *See Mayer*, 274 S.W.3d at 901 (citing TEX. CODE CRIM. PROC. ANN. art. 26.05(g); *Slaughter v. State*, Nos. 2-04-050-CR, 2-04-051-CR, 2005 Tex. App. LEXIS

21

713, at \*\*3-5 (Tex. App.–Fort Worth Jan. 27, 2005, no pet.) (mem. op., not designated for publication)); *see also Morris*, 2010 Tex. App. LEXIS 9684, at \*7; *Willis*, 2010 Tex. App. LEXIS 8255, at \*2. We sustain O'Bryan's fifth issue. Accordingly, we reverse the part of the judgment ordering O'Bryan to pay court costs and remand the case so that the trial court may recalculate the costs O'Bryan owes, if any, and determine if O'Bryan may be entitled to a refund.[15] *See Mayer*, 274 S.W.3d at 901; *see also Morris*, 2010 Tex. App. LEXIS 9684, at \*7; *Willis*, 2010 Tex. App. LEXIS 8255, at \*2.

## VI. INMATE ACCOUNT

By his sixth issue, O'Bryan contends that the trial court erroneously signed four "withdrawal orders, one for each count of conviction" directing the Texas Department of Criminal Justice to withdraw $3,093.50 from his inmate account.

However, because of our disposition of O'Bryan's fifth issue, we need not address his sixth issue. *See* TEX. R. APP. P. 47.1. Upon remand, the trial court must recalculate the amount O'Bryan still owes, if any, in court costs and may only order that amount to be withdrawn from his inmate account. *See* TEX. GOV'T CODE ANN. § 501.014 (e)(4) (Vernon Supp. 2010) (providing that upon notification from the trial court "the department shall withdraw from an inmate's account any amount the inmate is ordered to pay by order of the court" including payment in full for all orders for court fees and costs).[16]

---

[15] O'Bryan's court appointed attorney received $1,863.50 and his court appointed investigator received $550.

[16] We note that a court order directing prison officials to withdraw money from an inmate trust account is a civil matter akin to a garnishment action or an action to obtain a turnover order. *Harrell v.*

22

## VII.    CONCLUSION

We affirm the judgment of the trial court as it relates to O'Bryan's conviction and punishment, reverse the judgment assessing court costs, and remand for proceedings consistent with our opinion.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
14th day of April, 2011.

---

*State*, 286 S.W.3d 315, 317-19 (Tex. 2008); *Johnson v. Tenth Judicial Dist. Court of Appeals at Waco*, 280 S.W.3d 866, 874 (Tex. Crim. App. 2008) (original proceeding).  Due process entitles an inmate to receive notice of the withdrawal order and an opportunity to be heard, even though those requirements might be accorded the inmate after funds are withdrawn.  *Harrell*, 286 S.W.3d at 321.  It is unclear whether O'Bryan has had an adequate opportunity "to compare the amounts assessed by the trial court [in the underlying criminal proceeding] to the amount withdrawn and alert the court of any alleged errors." *See id.*  However, given that we have modified the judgment, it is incumbent on O'Bryan to alert the trial court of any errors in the amount withdrawn from his inmate account.