ACCEPTED
13-15-00386-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
11/16/2015 3:09:30 PM
Dorian E. Ramirez
CLERK

## No. 13-15-386-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
11/16/2015 3:09:30 PM
DORIAN E. RAMIREZ
Clerk

# THE STATE OF TEXAS,
# APPELLANT,

## v.

# MAURICIO CELIS,
# APPELLEE.

ON APPEAL FROM THE 148TH DISTRICT COURT
NUECES COUNTY, TEXAS

# APPELLANT'S BRIEF
# (STATE'S APPEAL)

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@nuecesco.com

Attorney for Appellant

**ORAL ARGUMENT IS REQUESTED**

# IDENTITY OF PARTIES AND ATTORNEYS

State's Trial and Appellate Attorney:
    Douglas K. Norman
    State Bar No. 15078900
    Assistant District Attorney
    901 Leopard, Room 206
    Corpus Christi, Texas 78401
    (361) 888-0410
    (361) 888-0399 (fax)
    douglas.norman@nuecesco.com

Appellee:
    Mauricio Celis

Appellee's Trial & Appellate Attorneys:
    David L. Botsford
    State Bar No. 02687950
    1307 West Avenue
    Austin, Texas 78701
    512-479-8030
    dbotsford@aol.com

    Gabi Canales
    State Bar No. 24012376
    4701 Ayers, Suite 105
    Corpus Christi, Texas 78415

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND ATTORNEYS. ............................................. i

INDEX OF AUTHORITIES. ............................................................... iii

STATEMENT OF THE CASE. ..................................................................1

ISSUES PRESENTED. ............................................................................2

STATEMENT OF FACTS. ........................................................................2

SUMMARY OF THE ARGUMENT. ..........................................................6

ARGUMENT. .........................................................................................7

**Ground of Error No. 1**
**The trial court lacked jurisdiction to reconsider its initial order denying the application for writ.**................................................................7

**Ground of Error No. 2**
**The trial court abused its discretion in finding that Celis' trial attorneys were ineffective in any of the ways alleged in the present application.** ........................................................................... 10

    **I. Celis' Claims.**.......................................................................... 10
    **II. Ineffective Assistance of Counsel for Failure to File a Motion to Suppress.**....................................................................................... 11
    **III. Well-Settled Law.**.................................................................. 13
    **IV. Lack of Possessory Interest in the Badge or Standing to Complain.** .......................................................................................... 15
    **V. No Illegal Seizure.**.................................................................. 20
    **VI. Failure of Proof on the Writ.** ............................................... 23
    **VII. Ineffective Assistance of Counsel for Failure to Request an Article 38.23 Jury Instruction.** ....................................................... 25

PRAYER. .............................................................................................. 28

RULE 9.4(i) CERTIFICATION ............................................................... 29

CERTIFICATE OF SERVICE. ............................................................... 29

# INDEX OF AUTHORITIES

## Cases

*Ex parte Bahena*, 195 S.W.3d 704 (Tex. Crim. App. 2006). ........................ 15

*In re Baylor Med. Ctr. at Garland,* 280 S.W.3d 227 (Tex. 2008)................ 10

*Ex parte Brown*, 158 S.W.3d 449 (Tex. Crim. App. 2005)............................6

*Ex parte Chandler*, 182 S.W.3d 350 (Tex. Crim. App. 2005). .............. 14, 15

*Chavez v. State*, 9 S.W.3d 817 (Tex. Crim. App. 2000)............................... 17

*Donovan v. State*, 68 S.W.3d 633 (Tex. Crim. App. 2002)............................9

*Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992). ........................... 17

*Garcia v. Dial,* 596 S.W.2d 524 (Tex. Crim. App. 1980). ...........................8

*Garcia v. State*, 15 S.W.3d 533 (Tex. Crim. App. 2000). ........................... 25

*Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). ......................... 25

*Haley v. Lewis,* 604 S.W.2d 194 (Tex. Crim. App. 1980). ...........................8

*Jackson v. State*, 973 S.W.2d 954 (Tex. Crim. App. 1998). .................. 11, 12

*United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652 (1984). ......... 15, 20

*Commonwealth v. John J. Zeigler*, NOS. 1845-1846., 1981 WL 207410 (Pa. Com. Pl. Jan. 6, 1981)................................................................................. 19

*Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725 (1960). ......................... 16

*Com. v. Karpinski*, 281 Pa. Super. 323, 422 A.2d 190 (1980). .................... 19

*Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574 (1986). .......... 12, 13

*Kirk v. State*, 454 S.W.3d 511 (Tex. Crim. App. 2015). ............................. 10

*Lewis v. United States*, 385 U.S. 206, 87 S. Ct. 424 (1966)......................... 23

*Madden v. State*, 242 S.W.3d 504 (Tex. Crim. App. 2007). .................. 26, 27

*Ex parte Maldonado*, 688 S.W.2d 114 (Tex. Crim. App. 1985). ................. 26

*Matthews v. State*, 431 S.W.3d 596 (Tex. Crim. App. 2014)....................... 18

*Ex parte Moreno*, 245 S.W.3d 419 (Tex. Crim. App. 2008)...........................9

*City of Ontario, Cal. v. Quon*, 560 U.S. 746, 130 S. Ct. 2619 (2010). ........ 19

*Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733 (2011). ............................... 13

*Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421 (1978). ................................. 16

*Roberson v. State,* 852 S.W.2d 508 (Tex. Crim. App. 1993)........................ 11

*Robinson v. State*, 377 S.W.3d 712 (Tex. Crim. App. 2012). ................. 22, 26

*Sanchez v. State*, 931 S.W.2d 331 (Tex. App.—San Antonio 1996). .......... 27

*Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577 (1979).............................. 16

*Ex parte Smith*, 296 S.W.3d 78 (Tex. Crim. App. 2009). ............................ 14

*Ex parte Smith*, 690 S.W.2d 601 (Tex. Crim. App. 1985). .............................8

*Soldal v. Cook County*, 506 U.S. 56, 113 S.Ct. 538 (1992). ............ 15, 16, 20

*Spring v. State,* 626 S.W.2d 37 (Tex. Crim. App. 1981)............................... 16

*Ex parte Tomlinson*, 295 S.W.3d 412 (Tex. App.—Corpus Christi 2009, no pet.). ...............................................................................................................9

*Vaughn v. State,* 931 S.W.2d 564 (Tex. Crim. App. 1996).......................... 14

*Ex parte Welch*, 981 S.W.2d 183 (Tex. Crim. App. 1998). ......................... 14

## Statutes & Rules

Tex. Code Crim. Proc. art. 11.072. .................................................................8

Tex. Penal Code § 31.01. ..................................................................... 21

Tex. Penal Code § 31.03. ..................................................................... 21

Tex. R. App. P. 21.1. ..............................................................................9

Tex. R. App. P. 79.2. ..............................................................................8

Black's Law Dictionary (10th ed., 2014). ...................................... 20

| THE STATE OF TEXAS, | § | COURT OF APPEALS |
| Appellant, | § | |
| | § | |
| V. | § | FOR THE THIRTEENTH |
| | § | |
| MAURICIO CELIS, | § | |
| Appellee. | § | DISTRICT OF TEXAS |

## APPELLANT'S BRIEF
## (STATE'S APPEAL)

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF THE CASE

Mauricio Celis was originally indicted for Impersonating a Public Servant (CR p. 12), but later convicted of the lesser offense of False Identification as a Peace Officer. (CR p. 688) In the present Article 11.072 habeas corpus proceeding, Celis complained that his trial attorneys rendered ineffective assistance of counsel by failing to adequately assert his right to suppress evidence of a badge that had allegedly been obtained unlawfully by the State, as well as the fruits thereof. (CR p. 725) After initially denying the application as frivolous (CR pp. 919 & 920), the trial court later granted a motion to reconsider (CR p. 934), and eventually granted the application and ordered a new trial based on Celis' claims of ineffective assistance of counsel. (CR pp. 989 & 994)

1

## ISSUES PRESENTED

**Ground of Error No. 1**
**The trial court lacked jurisdiction to reconsider its initial order denying the application for writ.**

**Ground of Error No. 2**
**The trial court abused its discretion in finding that Celis' trial attorneys were ineffective in any of the ways alleged in the present application.**

## STATEMENT OF FACTS

Celis' trial attorneys attempted to develop the evidence necessary to support their motion to suppress at an April 15, 2010, pre-trial hearing before assigned Judge Richard Terrell.

Deputy Sheriff Paul Rivera testified that, in September 2007, he was a captain in the Nueces County Sheriff's Office. (Original RR vol. 6, p. 96)[1] Sheriff Kaelin had assigned Rivera to investigate the badge in question, under the impression that it belonged to the Nueces County Sheriff's Department. (Original RR vol. 6, pp. 97-98) Officer Rivera then contacted Larry Olivarez, former Nueces County Sheriff and a friend of Celis. (Original RR vol. 6, p. 99) Officer Rivera met Olivarez at a restaurant and obtained the badge from him. (Original RR vol. 6, p. 103) When asked how, prior to that meeting, he had convinced Olivarez to return the badge,

---

[1] Reference to the "Original" Reporter's Record is to those volumes from the prior appeal of which this Court has taken judicial notice.

2

Officer Rivera testified, "Very simple. I asked for it and he said yeah, I'll give it to you." (Original RR vol. 6, p. 104) Officer Rivera denied that he had told Olivarez that Celis would not be prosecuted. (Original RR vol. 6, p. 105) In addition, Officer Rivera later testified that he did not think he told Olivarez that there would be no charges before he actually retrieved the badge, but that this conversation occurred afterward while they were still at the table together. (Original RR vol. 6, pp. 128-29) Moreover, Rivera testified that, when he initially obtained the badge under the impression that it was a Nueces County badge, it was his intention to close the case. (Original RR vol. 6, pp. 104-05) Only after Olivarez later began "hassling" Rivera to return the badge to Celis did Rivera and Sheriff Kaelin decide to approach the Nueces County District Attorney about the matter and pursue an investigation. (Original RR vol. 6, pp. 105-06) Rivera characterized this as "open[ing] the door to an investigation." (Original RR vol. 6, p. 109)

Duval County Sheriff Romeo Ramirez testified that Celis had been appointed a reserve deputy sheriff on May 14, 1997, but that he was no longer a reserve deputy sheriff as of October 15, 2003. (Original RR vol. 6, p. 167) Sheriff Ramirez testified that Celis had been issued the badge in question, but that the badge belonged to the Sheriff's Office and was the property of Duval County. (Original RR vol. 6, pp. 171-72)

3

Larry Olivarez testified that, after leaving office as Nueces County Sheriff, he was the general manager of Celis' law firm. (Original RR vol. 6, p. 177) Olivarez testified that Officer Rivera had called him about the badge flashing incident (which was the basis for the underlying criminal charges that led to the present conviction) and asked Olivarez to get the badge, supposedly claiming that the case would be dropped if Olivarez gave the badge to Rivera. (Original RR vol. 6, pp. 178-80) Specifically, Olivares testified that Rivera promised "If you give me the badge, this will be resolved, the cases will be dropped, everything will be stopped, the – the investigations, but we need that badge," and that "if I were to get the badge from Mr. Celis that his – his investigation showed that the D.A. was not going to follow any charges, no crime committed. They had nothing on the cases, they were going to drop them, but they wanted possession of that badge." (Original RR vol. 6, pp. 179-80) Olivares testified that he relayed the offer to Celis who reluctantly accepted and turned the badge over to him. (Original RR vol. 6, p. 181)

Nueces County Sheriff Jim Kaelin testified that the Corpus Christi Police Chief had called to tell him that he had a Nueces County reserve deputy badge that had been used in an incident the previous night. (Original RR vol. 6, p. 202) Sheriff Kaelin became concerned when he did not find

Celis on his roster of reserve deputies, and he asked Deputy Rivera to get the badge back. (Original RR vol. 6, p. 203) However, Sheriff Kaelin denied that he told Rivera to offer immunity to Celis or to tell him that everything would be closed if he gave the badge back. (Original RR vol. 6, p. 204)

Celis himself never testified to his understanding of the agreement with Rivera or why he turned the badge over to Olivares to turn over to Rivera.

The trial court orally denied the motion to suppress, but made no specific factual findings thereon. (Original RR vol. 6, pp. 239-41)

Concerning the present Article 11.072 writ proceeding, the trial court held a hearing at which the present judge of the 148th District Court, the Honorable Guy Williams, presided, although he was not present at the original suppression hearing or trial. At the 11.072 hearing, Celis' trial attorney, Jo Ellen Hewins, generally testified that she believed she had been ineffective in failing to seek suppression of the fruits of the badge, in failing to re-urge the suppression motion at trial, and in failing to raise an Article 38.23 objection in addition to a Fourth Amendment challenge to the badge and its fruits. (RR vol. 3)[2]

---

[2] This volume of the reporter's record remains to be filed with the Thirteenth Court of Appeals.

Following that hearing, the trial court filed Findings of Fact and Conclusions of Law in connection with its granting of relief on the present writ application. (CR p. 989) However, few, if any, of those findings actually resolve issues of historical fact raised by the application. Rather, the findings generally amount to legal conclusions that Celis' trial attorney rendered ineffective assistance of counsel in the manner specified in the application.[3]

## SUMMARY OF THE ARGUMENT

*Ground One* – The trial court's initial denial of the application as frivolous acted as a dismissal of the 11.072 proceeding and was not subject to reconsideration, in the absence of a statute or rule which would allow the trial court to reconsider.

*Ground Two* – Celis failed to prove that his trial attorneys were ineffective in their attempts to suppress the badge and its fruits because the underlying motion to suppress clearly lacked merit both because Celis lacked a privacy or possessory interest in the badge and thus lacked standing to complain, and because he failed to show that the badge was illegally seized.

---

[3] Such conclusions of law are given no deference, but are reviewed *de novo. See Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005).

6

## ARGUMENT

### Ground of Error No. 1
**The trial court lacked jurisdiction to reconsider its initial order denying the application for writ.**

On February 13, 2015, Celis filed his present 11.072 Application for Writ of Habeas Corpus. (CR p. 725) On March 19, 2015, the State filed an answer generally denying the allegations and asking the trial court to deny relief. (CR p. 908)

On March 30, 2015, the trial court signed an order denying the application as frivolous, together with findings and conclusions to the effect that Celis failed to make a viable case for his claims of ineffective assistance of counsel. (CR pp. 919 & 920)

On April 15, 2015, Celis filed a motion to reconsider that order of denial. (CR p. 921) At a hearing on the motion to reconsider, the State objected to the motion and questioned the trial court's jurisdiction to withdraw the earlier order. (RR vol. 2, pp. 2-3) However, the trial court signed an order on April 22, 2015, purporting to withdraw the earlier order denying relief. (CR p. 934)

The proceedings taken subsequent to the trial court's order granting the motion to reconsider have all been dependent upon the validity of that

order and subject to the State's challenge to the jurisdiction of the trial court to reconsider the denial of an 11.072 application.

Article 11.072 provides, in pertinent part, "If the court determines from the face of an application or documents attached to the application that the applicant is manifestly entitled to no relief, the court shall enter a written order denying the application as frivolous." Tex. Code Crim. Proc. art. 11.072, § 7(a). To the extent that the summary denial of relief as frivolous amounts to a dismissal of the application, it should be treated in the same manner as any other dismissal of a criminal proceeding. The Court of Criminal Appeals has long held that, "where a trial court has validly dismissed a case, the trial court has no authority to consider the dismissal ineffective and reinstate the case." *Ex parte Smith*, 690 S.W.2d 601, 603 (Tex. Crim. App. 1985) (citing *Garcia v. Dial,* 596 S.W.2d 524 (Tex. Crim. App. 1980); *Haley v. Lewis,* 604 S.W.2d 194 (Tex. Crim. App. 1980)).

In the context of an Article 11.071 death penalty writ, where the Court of Criminal Appeals itself makes the decision whether to grant or deny relief, that Court found authority to reconsider its initial disposition of the writ, but only because Tex. R. App. P. 79.2(d), adopted pursuant to the Court's legislatively endowed authority to promulgate rules of post-trial procedure in criminal cases, specifically authorized the Court to reconsider

its disposition of a post-conviction writ in a death-penalty case. *Ex parte Moreno*, 245 S.W.3d 419, 427 (Tex. Crim. App. 2008).

In the present case, there is no statutory provision or rule giving the trial court the authority to reconsider an initial order denying relief under Article 11.072. The statute itself says nothing about reconsideration. Nor do the appellate rules governing motions for new trial apply. Specifically, Tex. R. App. P. 21.1 defines "new trial" as "the rehearing of a criminal action after the trial court has, on the defendant's motion, set aside a finding or verdict of guilt." An order denying relief under Article 11.072 does not itself involve a "finding or verdict of guilt," such that Rule 21 has no application to allow reconsideration of that order. *Cf. Donovan v. State*, 68 S.W.3d 633, 636 (Tex. Crim. App. 2002) ("Because there is no finding or verdict of guilt [when adjudication is deferred], there is nothing that can be set aside so as to create an occasion for implementation of Rule 21").

Nor is the present case controlled by this Court's decision in *Tomlinson*, where the trial court initially granted a new trial pursuant to an Article 11.072 application, and this Court assumed that the trial court had jurisdiction to later reconsider that order and deny the application as frivolous. *See Ex parte Tomlinson*, 295 S.W.3d 412, 418 n.4 (Tex. App.— Corpus Christi 2009, no pet.). Unlike the dismissal or denial of relief in the

present case, the initial order granting relief in *Tomlinson* operated in the same manner as the granting of a new trial in general, which according to the most recent pronouncements of the Court of Criminal Appeals allows the trial court to retain jurisdiction to change its ruling for as long as it retains continuing jurisdiction over the proceeding – *i.e.*, until a final judgment is entered. *See Kirk v. State*, 454 S.W.3d 511, 513 (Tex. Crim. App. 2015) (quoting *In re Baylor Med. Ctr. at Garland,* 280 S.W.3d 227, 229–32 (Tex. 2008).)

Because the trial court in the present case lacked authority to reconsider its initial order denying the application, the subsequent orders purporting to reinstate the application and grant a new trial were void and should be set aside, and the initial order denying relief should be re-instated.

**Ground of Error No. 2**
**The trial court abused its discretion in finding that Celis' trial attorneys were ineffective in any of the ways alleged in the present application.**

**I. Celis' Claims.**

In his present Article 11.072 Application, Celis raised the following claims of ineffective assistance of counsel:

Counsels' failure to
(1) contemplate, identify and articulate the "fruits" in Celis' motion to suppress,
(2) rely upon not merely the Fourth Amendment, but also Article 38.23 of the Texas Code of Criminal Procedure;

(3) develop evidence regarding the exact nature and/or parameters of the "fruits" at the suppression hearing held on April 15, 2010, and

(4) object to the State's utilization of those "fruits" at trial, individually and collectively constitute deficient performance that undermines confidence in the outcome of the trial and the appeal.

(CR p. 725, Application p. 25)  Accordingly, Applicant's claims are limited to his trial attorneys' failure to complain about the fruits of the seizure and failure to raise Article 38.23 as an alternative ground for suppression.  Later in his Application, Celis asserted that:

> In order to establish constitutionally ineffective assistance, <u>Celis must prove that a proper motion to suppress is meritorious</u> and that there exists a reasonable probability that the outcome of the case would have been different absent the excludable evidence.

(CR p. 725, Application, p. 35)

The State contends that Celis was unable to show this requirement and that trial counsel may not be held ineffective for failing to properly move to suppress the badge and its fruits, both because Celis had insufficient interest in the badge to obtain standing, and because he failed to prove that he or his agent were induced to deliver the badge by any false promise.

## II. Ineffective Assistance of Counsel for Failure to File a Motion to Suppress.

The parties agree that Applicant Celis must prove that his motion to suppress would have been granted in order to satisfy *Strickland.*  *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (citing *Roberson v.*

11

*State,* 852 S.W.2d 508, 510–12 (Tex. Crim. App. 1993)). Specifically, in the context of an allegedly illegal search, the Court of Criminal Appeals requires that Applicant do more than merely raise "questions about the validity of the search," but asserts that he has "the burden to develop facts and details of the search sufficient to conclude that the search was invalid." *Jackson*, 973 S.W.2d at 957.

Likewise, the Supreme Court has set forth the Applicant's burden as follows:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probabilty that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574 (1986). Moreover, in addition to a meritorious Fourth Amendment claim, the Supreme Court requires more to prove an ineffective assistance claim, as follows:

> Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

12

*Kimmelman*, 477 U.S. at 382. A more recent Supreme Court case has characterized this additional requirement set forth in *Kimmelman* as proof that "no competent attorney would think a motion to suppress would have failed." *Premo v. Moore*, 562 U.S. 115, 124, 131 S. Ct. 733 (2011) (citing *Kimmelman*, 477 U.S. at 382).

As a part of the high burden of proving that no competent attorney would think that a motion to suppress would fail, the Applicant claiming ineffective assistance must show that his motion to suppress is supported by well-settled law.

### III. Well-Settled Law.

Specifically, the applicant must not only prove that a proper motion to suppress would have been granted or meritorious, but that it would have been *clearly* meritorious *under well settled law*, as discussed below. In other words, it is not enough that an appellate court might decide a novel issue of law in the applicant's favor if the issue had been properly raised on appeal; rather, in order to render trial counsel ineffective, the motion must have been based on well settled law at the time it was, or should have been, raised at trial. Otherwise, the requirements for preservation would be rendered meaningless and whatever claims appellant failed to preserve for appeal

could then be raised as ineffective assistance claims on a writ, whether or not based on well settled law.

As long as the legal issue on which counsel's supposed deficiency is based remains unresolved and unclear, he should not be held ineffective. *See Ex parte Smith*, 296 S.W.3d 78, 81 (Tex. Crim. App. 2009). "Ignorance of well-defined general laws, statutes and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel, but the specific legal proposition must be well considered and clearly defined." *Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005) (citation omitted). The *Chandler* opinion went on to explain that "counsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based upon unsettled law." 182 S.W.3d at 359 (quoting *Ex parte Welch*, 981 S.W.2d 183, 184 (Tex. Crim. App. 1998)); *see also Vaughn v. State,* 931 S.W.2d 564, 567 (Tex. Crim. App. 1996) (ineffective assistance of counsel claim cannot be based on alleged errors of counsel "when the caselaw evaluating counsel's actions and decisions in that instance was nonexistent or not definitive"). Conversely, "the more longstanding and well-settled the legal proposition, the more likely counsel

14

will be deemed deficient if he is ignorant of it." *Chandler*, 182 S.W.3d at 359 n.36.

Moreover, concerning the merits of the underlying legal issue, the Court of Criminal Appeals has explained that, "[i]t is not necessary in this case to settle this issue to dispose of applicant's ineffective assistance of counsel claim. It is necessary to decide only that it would not have been unreasonable for applicant's trial and appellate counsel to have [failed to object to the matter in question] based on law that was unsettled at the time." *Ex parte Bahena*, 195 S.W.3d 704, 707 (Tex. Crim. App. 2006)

In other words, in order to prevail on his ineffective assistance claims, Celis must convince this Court of the well-settled merits of each element of his claim.

## IV. Lack of Possessory Interest in the Badge or Standing to Complain.

This is a rare case in which a seizure of property occurred by voluntary surrender and in the absence of any search. Accordingly, consent search and confession cases are of limited, if any, value.

A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61, 113 S.Ct. 538 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652 (1984)).

15

When the seizure of an item is not accompanied by a search, the only interest at stake is the holder's possessory interest in the item and not any privacy interest in the surroundings. *See Soldal*. Accordingly, absent any possessory interest in the badge in question, there could be no Fourth Amendment violation in the present case.

The badge was the property of Duval County and had been issued to Celis in connection with his appointment as a reserve deputy sheriff.

Although there is very little authority on the matter, the State would argue that any "possessory interest" that Celis enjoyed was limited to a proper use of the badge in performing his duties as a reserve deputy sheriff and not the sort of possessory interest of a personal nature that would be protected by the Fourth Amendment. Just as the Supreme Court has noted that it is not bound by property law in determining the extent of a privacy right, *see Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421 (1978) ("arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control"); *Jones v. United States,* 362 U.S. 257, 266–67, 80 S.Ct. 725 (1960); *Spring v. State,* 626 S.W.2d 37, 41 (Tex. Crim. App. 1981), but instead determines such cases based on the whether the defendant's expectation of privacy is one that society is willing to recognize as reasonable, *see Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct.

2577 (1979), so in the protection of a possessory interest, a similar question should arise concerning the reasonability of protecting a possessory interest in property issued to the defendant, not for his own use and enjoyment, but strictly for the benefit of the public entity entrusting him with possession. The State would suggest that society is not willing to recognize as reasonable the Fourth Amendment protection as a private interest of this sort of limited possessory right. If a property right was violated at all, it was one held by Duval County and not by Celis as an individual.

Moreover, even if Celis may have had a temporary possessory interest in the badge while he remained a reserve deputy sheriff, that interest disappeared when he was terminated in 2003. Celis clearly had no standing to complain that he was wrongfully deprived of a possessory interest in the badge at the time it was handed over to Officer Rivera and could not raise a Fourth Amendment challenge to the seizure.

Likewise, Article 38.23 has consistently been held to contain an implicit standing requirement parallel to that of the Fourth Amendment, such that the defendant has no standing to complain about the seizure of evidence when no invasion of his own rights occurred when it was seized. *See Chavez v. State*, 9 S.W.3d 817, 819 (Tex. Crim. App. 2000); *Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992).

17

At the hearing on his writ, Celis presented the trial court with *Matthews v. State*, 431 S.W.3d 596 (Tex. Crim. App. 2014), a recent opinion by the Texas Court of Criminal Appeals, for the unremarkable proposition that one may have a privacy interest, and thus standing, in a borrowed car. *Id.* at 607-08.

Borrowed-car cases have little in common with a badge issued to a reserve deputy sheriff for the limited purpose of performing his duties as such. However, even if there might be some similarity between a borrowed car and a borrowed/issued badge, the privacy interest breaks down when the item in question was issued by a law enforcement agency for law enforcement purposes.

Though it appears that no Texas case has addressed the issue, a 1980 Pennsylvania case, in which a police chief was accused of stealing parking meter money, refused to find standing for the police chief to suppress a search of his police car, as follows:

> We simply cannot conceive any factual situation, including that presented in the instant case, where we would find that any person would have a reasonable or legitimate right to expect that a police vehicle would be private and safe from governmental intrusion. We do not believe, in the words of the Supreme Court in Katz, that such an expectation is one that "... society is prepared to recognize as 'reasonable.' " 389 U.S. at 361, 88 S.Ct. at 520. There is no arguable basis under any "understandings that are recognized and permitted by society" (Rakas, 439 U.S. at 143, fn. 12, 99 S.Ct. at 430, fn. 12), for one to conclude that a police car would be a place to conceal illicit

18

objects without the likelihood of unfettered governmental search and seizure. To hold otherwise would not only be illogical, but it would clearly be contrary to anything which our society has ever been prepared to accept as proper. Instead we strongly and clearly hold that one has no legitimate right to expect privacy from governmental searches and seizures when storing objects or things in a police vehicle.

*Com. v. Karpinski*, 281 Pa. Super. 323, 327, 422 A.2d 190, 192 (1980); *see also Commonwealth v. John J. Zeigler*, NOS. 1845-1846., 1981 WL 207410 (Pa. Com. Pl. Jan. 6, 1981) (refusing to find a privacy interest or standing in a police-issued gun, for similar reasons).

Likewise, privacy and possessory interests in employer-provided equipment is anything but settled law. The Supreme Court itself has been reluctant "to establish far-reaching premises that define the existence, and extent, of privacy expectations enjoyed by employees when using employer-provided communication devices," noting that "it is uncertain how workplace norms, and the law's treatment of them, will evolve," and the difficulty in "predicting how employees' privacy expectations will be shaped by those changes or the degree to which society will be prepared to recognize those expectations as reasonable." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 759-60, 130 S. Ct. 2619 (2010). Though communications and electronic devices may be more recent and of a more fluid and changing nature than a metal badge, there remains a similar uncertainty concerning the

19

privacy and possessory expectations of the employee in equipment that has been provided to him exclusively for employment-related use.

## V. No Illegal Seizure.

However, even if it could be argued that Celis had a personal possessory interest in the badge that should be protected against unreasonable seizure by law enforcement, the badge was not illegally seized or stolen.

For purposes of the Fourth Amendment, a "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S. Ct. 538 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652 (1984)). "Seize" is defined by Black's Law Dictionary as "**1.** To forcibly take possession (of a person or property)." Black's Law Dictionary (10th ed., 2014).

In the present case, because the badge was freely turned over to Rivera, it was not "seized" in the ordinary sense of the word. Nor was it stolen by Officer Rivera under Texas law concerning theft of property, both because the sheriff reasonably believed that he had a greater right of possession and because his deputy made no promise that he did not intend to keep at the time he obtained consensual possession of the badge.

The Penal Code provides that a "theft" occurs under the following circumstances:

> (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
> (b) Appropriation of property is unlawful if:
>> (1) it is without the owner's effective consent;

Tex. Penal Code § 31.03.  These terms are defined, in pertinent part, as follows:

> (1) "Deception" means:
>> (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.
>> \* \* \*
> (3) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:
>> (A) induced by deception or coercion;

Tex. Penal Code § 31.01.

Intent to deprive the owner is a key element of theft, yet in the present case Sheriff Kaelin and Officer Rivera believed that the badge was a Nueces County badge at the time they took possession, and thus that they had a greater right to possession than did Celis.  Accordingly, they could not have committed a theft of their own property.

Moreover, to the extent that their belief that it was a Nueces County badge was reasonable under the circumstances, it would amount to a mistake

21

of fact that would justify their actions and would not require exclusion of the evidence under the Fourth Amendment. *See Robinson v. State*, 377 S.W.3d 712, 720-21 (Tex. Crim. App. 2012) ("a mistake about the facts, *if* reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be").

In addition, even if they had known that it was a Duval County badge, Officer Rivera's testimony was undisputed that he did in fact intend not to pursue the investigation or charges at the time he took possession of the badge, such that consent was not induced by deception under the terms of the theft statute. Moreover, Officer Rivera's later decision to supposedly break his promise, after learning that it was a Duval County badge and being harassed by Olivares for its return, could not have turned his prior actions into a theft or vitiated the legitimacy of the original voluntary transfer of the badge to him.

Finally, even if we were to discount Sheriff Kaelin and Officer Rivera's belief that they had a greater right to possession, and that Officer Rivera intended not to pursue further investigation or charges at the time he acquired the badge, this would not necessarily make his obtaining of the badge illegal for purposes of the Fourth Amendment.

The Supreme Court has long recognized that law enforcement may obtain evidence in certain cases by "stratagem or deception," as where an undercover officer gains entry to premises by deceiving the occupant as to his identity or purpose, but that, as long as the officer does not stray beyond the permission validly, but deceptively, obtained, evidence discovered need not be suppressed. *See Lewis v. United States*, 385 U.S. 206, 208-10, 87 S. Ct. 424, 426-27, 17 L. Ed. 2d 312 (1966).

Likewise, in the present case, Officer Rivera obtained the badge by consent, and, whether or not that consent was obtained by deception or false promises, it was not illegally obtained for purposes of the Fourth Amendment simply because law enforcement was not entirely truthful with the defendant.

## VI. Failure of Proof on the Writ.

However, even if his legal theory for suppression might otherwise have been valid, the testimony at the suppression hearing was controverted as to whether Officer Rivera made any promises at all prior to receiving the badge from Olivarez, Judge Terrell failed to make findings on this issue, and it was improper for Judge Williams, who had nothing more than a cold record of that hearing, to make credibility findings in Celis' favor on that record alone.

Although Judge Terrell made no specific fact findings on the motion to suppress, Celis nevertheless attempts to glean findings from certain comments by Judge Terrell. The comments in question are speculative and non-committal. At one point, Judge Terrell said that Celis "may very well have a legitimate argument." He characterized the question as involving "disputed issues." He agreed that "law enforcement can't go in and essentially lie to people and say turn this over, you won't get prosecuted," but he did not say that he believed that this happened in the present case. (Original RR vol. 6, p. 240) In short, he was agreeing with a theory and not the underlying facts to prove that theory.

Celis essentially confuses the trial court's musings and informal remarks with formal findings. Would Judge Terrell have believed the testimony of Officer Rivera or Larry Olivarez? Because he believed he could resolve the issue on the basis of standing, he did not make that finding, and it would be improper and inaccurate to read such a finding into the record based on these informal remarks.

Accordingly, Celis is left with a record containing controverted testimony from a hearing at which the present judge did not preside.

The Court of Criminal Appeals has generally been reluctant to allow successor-judge findings for the following reason:

Recently, we stated that "appellate courts ... should afford [almost total] deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). This is the proper standard of review because the trial judge viewing the witnesses and hearing their testimony is in a better position to evaluate their credibility and demeanor than is an appellate judge who must rely on only a written transcript of the hearing. *See id.* at 87. For the same reason, it is not appropriate for the second judge in the instant case to make findings of fact based solely on the written transcript of the initial hearing. It is inconsistent to restrict an appellate court's review of such findings because it has nothing to review but a "cold" record, yet allow a trial judge to make such findings based on nothing but that same "cold" record.

*Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000).

Yet, in the present case, Celis appears to rely on implicit factual determinations by Judge Williams concerning the merits of the underlying motion to suppress and the credibility of the witnesses regarding disputed testimony at a pre-trial hearing at which another judge presided, and of which Judge Williams had only a cold record to review. The cold record should be considered insufficient in the present case to carry Celis' burden to prove his ineffective assistance claim by a preponderance of the evidence.

### VII. Ineffective Assistance of Counsel
### for Failure to Request an Article 38.23 Jury Instruction.

In his present Application for Writ of Habeas Corpus, Celis fails to raise as a ground of ineffectiveness the failure of his trial attorneys to request an Article 38.23 instruction to the jury. (CR p. 729) Accordingly, the trial

court's findings and conclusions that "it was ineffective assistance of counsel not to submit a 38.23 issue to the jury" (CR p. 989, No. 8) and that counsel's performance was deficient by failing "to request a charge under Article 38.23 of the Texas Code of Criminal Procedure" (CR p. 989, No. 14(e)), exceed the scope of the application and should not have even been considered by the trial court. *See Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985) (applicant must adequately allege facts that entitle him to relief).

However, even if he had raised this as a ground of ineffectiveness, Celis failed to show that he was entitled to such an instruction.

The Court of Criminal Appeals has said that "[a] defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible," and has set out the following three requirements for entitlement to an Article 38.23 jury instruction:

> (1) The evidence heard by the jury must raise an issue of fact;
> (2) The evidence on that fact must be affirmatively contested; and
> (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007); *see also Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012) (defendant

not entitled to an Article 38.23 instruction when the only disagreement in this case was not about the facts, but about the legal significance of the facts). Absent such a showing, the Court concluded that, "[i]f there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law." *Madden*, 242 S.W.3d at 510.

For the reasons already discussed, Celis failed to show based on well-settled law either that he had standing to complain or that the badge in question was illegally seized, such that there was no factual issue for the jury to determine that would have been material to the lawfulness of obtaining it, and thus no justification for submission of an Article 38.23 instruction. Accordingly, Celis cannot show that his trial attorneys were deficient for failing to request such an instruction based on well-settled law.

In addition, even if Celis' trial attorneys had been deficient in failing to request an Article 38.23 instruction to the jury, in order to prove prejudice he was required to show that it was "very probable under the fact of this case that the jury would have found" that the evidence was illegally obtained. *Sanchez v. State*, 931 S.W.2d 331, 336 (Tex. App.—San Antonio 1996), *overruled on other grounds by Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997).

Again, for the reasons already explained, Celis failed to present a sufficient showing in the present writ proceeding to prove that the jury would have believed Olivarez's testimony over Rivera's, even if that testimony had raised a material fact issue that could have justified suppression.

For all of these reasons, Celis has failed to prove any of his claims of ineffective assistance of counsel and the trial court erred in granting relief on the present writ.

**PRAYER**

For the foregoing reasons, the State respectfully requests that the Court of Appeals order the trial court to vacate its order granting a new trial, and for all other relief to which the State shows itself justly entitled.

Respectfully Submitted,

/s/ *Douglas K. Norman*

_____
Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@nuecesco.com

**RULE 9.4 (i) CERTIFICATION**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 6,102.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman

**CERTIFICATE OF SERVICE**

This is to certify that a copy of this brief was e-mailed on November 16, 2015, to Appellee's attorney, Mr. David Botsford, at dbotsford@aol.com.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman